## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KRAIG BICKERSTAFF, et al.  )
           )
      Plaintiffs,  )
           )
vs.          )  Case No. CIV-11-1305-M
           )
HALLIBURTON ENERGY  )
SERVICES, INC.,     )
           )
      Defendant.  )


FRANK D. ELDRIDGE, et al.  )
           )
      Plaintiffs,  )
           )
vs.          )  Case No. CIV-11-1306-M
           )
HALLIBURTON ENERGY  )
SERVICES, INC.,     )
           )
      Defendant.  )

ROBIN L. BOOTH, et al.   )
           )
      Plaintiffs,  )
           )
vs.          )  Case No. CIV-11-1308-M
           )
HALLIBURTON ENERGY  )
SERVICES, INC.,     )
           )
      Defendant.  )

HARMEN ARLEN MAY, et al.  )
           )
      Plaintiffs,  )
           )
vs.          )  Case No. CIV-11-1309-M

HALLIBURTON ENERGY
SERVICES, INC.,                          )
                                          )
                                          )
                                          )
                Defendant.                )

LESLIE T. CAMPBELL, et al.               )
                                          )
                Plaintiffs,               )
                                          )
vs.                                       )      Case No. CIV-11-1311-M
                                          )
HALLIBURTON ENERGY                        )
SERVICES, INC.,                          )
                                          )
                Defendant.                )

EVELYN BERNICE SOUTHERLAND,              )
                                          )
                Plaintiff,                )
                                          )
vs.                                       )      Case No. CIV-11-1312-M
                                          )
HALLIBURTON ENERGY                        )
SERVICES, INC.,                          )
                                          )
                Defendant.                )

STEPHEN G. JONES, et al.,                )
                                          )
                Plaintiffs,               )
                                          )
vs.                                       )      Case No. CIV-11-1322-M
                                          )
HALLIBURTON ENERGY                        )
SERVICES, INC.,                          )
                                          )
                Defendant.                )

TERRY CHEEK, et al.                       )
                                          )
                Plaintiffs,               )
                                          )

vs.                                    )        Case No. CIV-13-0116-M
                                       )
HALLIBURTON ENERGY                     )
SERVICES, INC.,                        )
                                       )
                  Defendant.           )

---

**DEFENDANT HALLIBURTON ENERGY SERVICES, INC.'S RESPONSE TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Gerald P. Green
Peter L. Wheeler
Robert L. Betts
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
Post Office Box 26350
Oklahoma City, Oklahoma  73126

J Kevin Buster (*pro hac vice*)
Carmen R. Toledo (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA  30309

R. Bruce Hurley (*pro hac vice*)
Elizabeth R. Taber (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002

*Attorneys for Defendant,
Halliburton Energy Services, Inc.*

May 29, 2015

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

RESPONSE TO MOVING PLAINTIFFS' "UNDISPUTED MATERIAL FACTS"  3

HESI'S STATEMENT OF ADDITIONAL FACTS PRECLUDING SUMMARY
       JUDGMENT ........................................................................................4

STANDARD OF REVIEW ...........................................................................................5

ARGUMENT AND AUTHORITY .................................................................................5

I.     SUMMARY JUDGMENT IS IMPROPER ON MOVING PLAINTIFFS'
      TRESPASS CLAIMS .............................................................................5

      A.    No Moving Plaintiff Alleges or Proves the Substantial Physical
           Injury to Property Required in Oklahoma in Cases of Intangible
           Trespass ........................................................................................5

      B.    Additionally, Plaintiffs with Perchlorate Levels on their
           Property Below the EPA's Interim Safe Level Have No Legally
           Cognizable Injury and, at Best, Disputed Issues of Fact Would
           Remain with Respect to the Remaining Two Properties with
           Levels Above 15 ppb.................................................................10

II.    SUMMARY JUDGMENT IS IMPROPER AS TO MOVING PLAINTIFFS'
      PUBLIC NUISANCE CLAIMS ...........................................................12

      A.    Moving Plaintiffs' Reliance on Section 2-6-105 of the Oklahoma
           Environmental Quality Code Undercuts Their Own Arguments.........13

      B.    Additionally, Moving Plaintiffs Have Not Shown the "Special
           Injury" Necessary to Recover for Public Nuisance...............................17

III.   SUMMARY JUDGMENT IS IMPROPER ON HESI'S AFFIRMATIVE
      DEFENSES ..........................................................................................21

CONCLUSION ...........................................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)........................................................................5

*Adkins v. Thomas Solvent Co.*,
487 N.W.2d 715 (Mich. 1992)......................................................20

*Angier v. Mathews Exploration Corp.*,
905 P.2d 826 (Okla. Civ. App. 1995) ............................................9

*Arriaga v. New England Gas Co.*,
483 F. Supp. 2d 177 (D.R.I. 2007)...............................................20

*Beal v. Western Farmers Electric Cooperative*,
228 P.3d 538 (Okla. Civ. App. 2009) ............................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................5

*Cook v. Rockwell International Corp.*,
618 F.3d 1127 (10th Cir. 2010) ..................................................7, 8

*Cooperative Refinery Association v. Young*,
393 P.2d 537 (Okla. 1964)..........................................................9, 10

*Davis v. Shell Oil. Co.*,
795 F.Supp. 381 (W.D. Okla. 1992). ...........................................19

*Fairlawn Cemetery Ass'n v. First Presbyterian Church*,
496 P.2d 1185 (Okla. 1972).....................................................6, 7, 9

*Frank v. Mayberry*,
985 P.2d 773 (Okla. 1999) ............................................................9

*Hamrick v. George*,
378 P.2d 324 (Okla. 1962).............................................................14

*McKay v. City of Enid*,
109 P. 520 (Okla. 1910).................................................................18

*N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*,
929 P.2d 288 (Okla. Civ. App. 1996) ...........................11, 16, 17, 18

*Phillips v. Calhoun*,
  945 F.2d 949 (10th Cir. 1992) ............................................................5

*Pure Oil Co. v. Quarles*,
  82 P.2d 970 (Okla. 1938) ...............................................................9, 10

*Rhodes v. E.I. Du Pont de Nemours & Co.*,
  657 F. Supp. 2d 751 (S.D. W. Va. 2009) .......................................20

*Robison v. Ray*,
  637 P.2d 108 (Okla. 1981) ...............................................................14

*Sabine Corp. v. ONG W., Inc.*,
  725 F. Supp. 1157 (W.D. Okla. 1989) .........................................22, 23

*Tarrant Reg'l Water Dist. v. Herrmann*,
  656 F.3d 1222 (10th Cir. 2011), *aff'd*, 133 S. Ct. 2120 (2013) ..............22

*Trail v. Civil Eng'r Corps*,
  849 F. Supp. 766 (W.D. Wash. 1994) ...............................................11

*United States v. Agri Services, Inc.*,
  81 F.3d 1002 (10th Cir. 1996) ...........................................................5

*Vertex Holdings, LLC v. Cranke*,
  217 P.3d 120 (Okla. Civ. App. 2008) .................................................9

*Walker v. Apex Wind Constr., LLC*,
  No. CIV-14-914-D, 2015 WL 348778 (W.D. Okla. Jan. 26, 2015) .........6

*Williamson v. Fowler Toyota, Inc.*,
  956 P.2d 858 (Okla. 1998) .................................................................9

**Statutes**

12 O.S § 95 .........................................................................................7

27A O.S. § 2-1-102 ................................................................. *passim*

27A O.S. § 2-6-105 ...............................................................13, 15, 18

50 O.S. § 10 ...........................................................................2, 12, 17

**Other Authorities**

75 Am. Jur. 2d Trespass § 27 ...............................................................6

Fed. R. Civ. P. 56 ................................................................................5

**HALLIBURTON ENERGY SERVICES, INC.'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Halliburton Energy Services, Inc. ("HESI") responds to the Motion for

Partial Summary Judgment ("Motion" or "Pls.' Mot.") of certain Plaintiffs ("Moving

Plaintiffs")[1] as follows:

## INTRODUCTION

Moving Plaintiffs request summary judgment in their favor on the trespass claims

of some Plaintiffs,[2] on the public nuisance claims of all Plaintiffs, and on certain

affirmative defenses. Their Motion lacks merit as to each request.

A traditional trespass claim involves a tangible, physical invasion of property. In

addition, however, where an invasion is ***intangible***—*i.e.*, where the invasion consists of

something that cannot be seen, smelled, tasted, or otherwise detected by the human

senses—a trespass claim can still lie, but only if the alleged intangible invasion results in

***substantial physical damage*** to the property. Here, Moving Plaintiffs have not pled or

proven *either* a tangible invasion *or* physical damage to property. Furthermore, their

trespass claims fail for the additional reason that the majority of Moving Plaintiffs have

---

[1]   The Motion has been filed or incorporated in all related cases wherein Mr. Wes
Johnston is lead Plaintiffs' counsel. *See*, in the *Bickerstaff* case, No. CIV-11-1305-M
[Doc. #127]; in the *Eldridge* case, No. CIV-11-1306-M [Doc. #116]; in the *Booth* case,
No. CIV-11-1308-M [Doc. #116]; in the *May* case, No. CIV-11-1309-M [Doc. #116]; in
the *Campbell* case, No. CIV-11-1311-M [Doc. #116]; in the *Southerland* case, No. CIV-
11-1312-M [Doc. #116]; in the *Jones* case, No. CIV-11-1322-M [Doc. #122]; in the
*Cheek* case, No. CIV-13-116-M [Doc. #100].

[2]   HESI interprets the Motion to be moving for summary judgment on the trespass
claims with respect to four properties: the Bickerstaff, Jones, Handke, and Lindahl
properties. *See* Pls.' Statement of Undisputed Material Facts, ¶¶ 18-22.

no cognizable injury as a matter of law because perchlorate concentrations on their property do not exceed the U.S. Environmental Protection Agency's ("EPA") interim safe drinking water level of 15 parts per billion ("ppb") for perchlorate. For the owners of the two properties that do contain perchlorate concentrations exceeding the EPA's interim safe level, even assuming they could maintain an intangible trespass claim in the absence of substantial physical damage (and they cannot), issues of material fact would still remain because the parties clearly dispute whether health risks exist for perchlorate at the levels present on those two properties.

In addition, Moving Plaintiffs are not entitled to summary judgment for public nuisance because, under the provision of the Oklahoma Environmental Quality Code they rely upon to advance their claims, they have the burden of proving the presence of a substance "[1] in *quantities which are or will likely create a nuisance* or [2] which will render the environment *harmful or detrimental or injurious to public health, safety or welfare*." 27A O.S. § 2-1-102(12) (emphasis added). Again, the vast majority of Moving Plaintiffs' properties are either not contaminated at all or have perchlorate concentrations below the EPA's interim safe level of 15 ppb, meaning that Moving Plaintiffs cannot prove either of those prongs as a matter of law. At the very minimum, those issues involve disputed questions of fact that preclude the entry of summary judgment. Second, and equally fatal, each Moving Plaintiff must show that the alleged public nuisance is "specially injurious" to them, 50 O.S. § 10, as this Court has already held. *See McCormick*, No. CIV-11-1272-M [Doc. #215] at 6. By definition, that element requires a property-specific, individualized showing of harm, yet Moving Plaintiffs have

offered no such evidence of "special injury" whatsoever.

Finally, Moving Plaintiffs' request for partial summary judgment on certain of HESI's affirmative defenses should be denied as moot because, since the filing of the Motion, HESI has filed amended pleadings in which many of the cited defenses have been omitted. The remaining defenses are well-evidenced, as will be shown below.

**RESPONSE TO MOVING PLAINTIFFS' "UNDISPUTED MATERIAL FACTS"**

1-15. Undisputed.

16. While HESI does not dispute this fact, it is not material because none of the Plaintiffs at issue in this Motion own property with concentrations of perchlorate that "range up into the tens of thousands of parts per billion." *See* Pls.' Statement of Undisputed Material Facts, ¶¶ 18-21; *see also* Report of Robert C. Knox ("Knox Rpt."), ¶¶ 24-25 (attached as Ex. 1).

17-18. Undisputed.

19. Undisputed, with clarification. HESI's hydrologist Steven Larson testified in relevant part: "I think the source of at least the elevated perchlorate in there -- obviously, there's a background at some level in there, too. But the elevated perchlorate is due to migration from the site, probably caused in part by the fact that he was pumping the well and therefore diverting some water..." 1/15/15 Larson Dep. at 316:7-12 (attached as Ex. 2).

20-22. Undisputed.

23. Undisputed that the "various affirmative defenses" were raised by HESI, and that the May 2014 discovery responses promulgated by HESI and attached to Moving Plaintiffs'

Motion do not set forth the full factual basis for each and every affirmative defense raised. Disputed that HESI had any duty to do so at that time; as set forth repeatedly in the May 2014 discovery responses: "HESI objects that merits discovery in accordance with the Court's scheduling order is ongoing and facts relevant to individual properties and property owners have not yet been ascertained." *See*, *e.g.*, Moving Pls.' Ex. 11 at 6. Likewise, also now disputed because HESI has agreed to drop several of these affirmative defenses, just as Moving Plaintiffs have agreed to dismiss certain counts and claims.

## HESI'S STATEMENT OF ADDITIONAL FACTS PRECLUDING SUMMARY JUDGMENT

1. Moving Plaintiffs have presented no evidence that the minute levels of perchlorate in their well water or groundwater can be detected by the human senses.

2. The trace levels of perchlorate at issue in this litigation are not capable of being perceived by the senses. *See* Report of Gary L. Ginsberg ("Ginsberg Rpt.") at 26 (Plaintiffs' expert stating that "perchlorate does not impart an odor or taste") (attached as Ex. 3).[3]

3. Moving Plaintiffs have presented no evidence that any of their properties have been physically damaged by the minute levels of perchlorate in their well water or groundwater.

4. Moving Plaintiffs acknowledge that the EPA has established an interim safe drinking water level for perchlorate of 15 ppb. *See* Pls.' Statement of Undisputed

---

[3] Moving Plaintiffs have adopted Dr. Ginsberg's expert report. *See Bickerstaff*, No. CIV-11-1305-M [Doc. #72] at 4.

Material Facts, ¶ 17. Moreover, the Oklahoma Department of Environmental Quality ("ODEQ")—the state agency tasked with investigating and remediating perchlorate from the Osage Road facility (the "Site")—has consistently deferred to the EPA's interim safe level of 15 ppb. As recently as February 25, 2015, ODEQ stated that "groundwater below 15 μg/L perchlorate will be considered clean to use." *See* Letter from Jon Reid, ODEQ Environmental Programs Specialist, to Jim McGinty (HESI) (Feb. 25, 2015) (attached as Ex. 4). Specifically, the agency will allow water containing such levels to be pumped back into the subsurface at the Site during remediation.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of a material fact exists, the evidence and all reasonable inferences are to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *United States v. Agri Services, Inc.*, 81 F.3d 1002, 1005 (10th Cir. 1996). Unsubstantiated allegations carry no probative weight in summary judgment proceedings. *Phillips v. Calhoun*, 945 F.2d 949, 951 n.3 (10th Cir. 1992).

## ARGUMENT AND AUTHORITY

### I. SUMMARY JUDGMENT IS IMPROPER ON MOVING PLAINTIFFS' TRESPASS CLAIMS

#### A. No Moving Plaintiff Alleges or Proves the Substantial Physical Injury to Property Required in Oklahoma in Cases of Intangible Trespass

Under Oklahoma law, "trespass involves an actual physical invasion of the property of another." *Fairlawn Cemetery Ass'n v. First Presbyterian Church*, 496 P.2d 1185, 1187 (Okla. 1972). In a traditional trespass case, a defendant is liable for trespass when he or she personally enters another's property, or causes something tangible to enter the property, without consent. *See id.* at 1188. Oklahoma law also recognizes, however, in accord with the vast majority of other jurisdictions, that a trespass can also lie even if there is an *intangible* invasion. When the alleged intrusion onto a plaintiff's real property is intangible, however, the alleged invasion must be accompanied by *substantial physical damage* to the real property stemming from the alleged trespass. *See Beal v. Western Farmers Electric Cooperative*, 228 P.3d 538, 541 (Okla. Civ. App. 2009) (in order to recover in trespass for an intangible invasion to property, the plaintiff must show "**substantial damage to the property**" (emphasis added)); *Walker v. Apex Wind Constr., LLC*, No. CIV-14-914-D, 2015 WL 348778, at *5 (W.D. Okla. Jan. 26, 2015) (DeGiusti, J.) (dismissing trespass claims with prejudice due to plaintiffs' failure to "allege any facts to demonstrate **physical damage to the real property so as to constitute an invasion of Plaintiffs' possessory interests**," as required in cases of "intangible intrusion[s]" (emphasis added)); *see also* 75 Am. Jur. 2d Trespass § 27 (recognizing distinction between tangible and intangible intrusions in trespass cases, and noting that intangible invasions require plaintiffs to prove "substantial damage to the property").

Thus, Moving Plaintiffs have the burden of proving a trespass in one of two ways: by showing a tangible physical invasion to their property *or* by showing an intangible invasion that caused substantial physical damage to their property. They have done

neither. First, Plaintiffs have offered no evidence—nor could they—that the minute levels of perchlorate at issue in this litigation are capable of being perceived by the senses. In fact, Plaintiffs' expert opines that "perchlorate does not impart an odor or taste."[4] Ginsberg Rpt. at 27. Clearly, Plaintiffs cannot recover under a traditional trespass theory. Second, Plaintiffs have presented no evidence or even alleged that the trace levels of perchlorate in their well water have had any physical impact on their properties, much less caused substantial physical damage.

In examining whether Moving Plaintiffs have met their burden of proof in this intangible trespass case, the Tenth Circuit's opinion in *Cook v. Rockwell International Corp.*, 618 F.3d 1127 (10th Cir. 2010), is highly instructive. In *Cook*, the plaintiffs brought trespass and nuisance claims arising from the release of plutonium from a nearby weapons plant that allegedly contaminated their properties. *Id.* at 1132. After a jury found for the plaintiffs, the defendants argued on appeal that the district court erred in failing to require the plaintiffs to prove "physical damage" to the property as an element of their trespass claim. *Id.* at 1147. The Tenth Circuit observed that Colorado law—like Oklahoma's law—recognizes a distinction between traditional trespass claims and intangible trespass claims. While a traditional trespass claim requires a plaintiff to prove a "physical intrusion," an *intangible* trespass claim requires the plaintiff "to prove

---

[4]     Indeed, if the perchlorate at issue in this litigation *were* tangible and could be perceived by the senses, then the discovery rule would be inapplicable and Plaintiffs' claims would be barred by the two-year statute of limitations applicable to trespass claims. *See* 12 O.S § 95; *see also Fairlawn Cemetery*, 496 P.2d at 1187-88 (plaintiffs' trespass claims barred by two-year statute of limitations because encroaching substance—in that case, piles of dirt—was "conspicuously visible").

***physical damage to the property*** caused by such intangible intrusion." *Id*. at 1148 (emphasis added). The Tenth Circuit concluded that even though the plaintiffs' properties were contaminated, because the plutonium on their land was imperceptible by the senses, the plaintiffs needed to prove "actual physical damage" to their properties in order to recover for trespass:

> [W]hether a trespass claim falls under the traditional rubric or must be pursued as an intangible trespass is determined by whether the intrusion is palpable. Plaintiffs do not dispute that the plutonium particles present on their properties are impalpable and imperceptible by the senses. ***Although we recognize the particles in question have mass and are physically present on the land***, our interpretation of Colorado law compels us to conclude that because the particles are impalpable**, *the trespass alleged here must be tried as an intangible trespass*. Consequently, Plaintiffs are required to prove **actual physical damage** to their properties in order to prevail on their trespass claims.

*Id*. at 1148-49 (emphasis added). The court then considered the jury instruction on plaintiffs' trespass claim, which directed that "Plaintiffs are *not* required to show that plutonium is present on the Class Properties at any particular level or concentration…or that the presence of plutonium on the Class Properties damages these properties in some other way." *Id*. at 1149. The Tenth Circuit held that this instruction was erroneous as a matter of law and that "Plaintiffs shall be required to prove the plutonium contamination caused 'physical damage to the property' in order to prevail on their trespass claims." *Id*.

Significantly, each and every case cited by Plaintiffs in support of their Motion involved "traditional" trespass claims concerning tangible physical invasions of property. A cursory review of Plaintiffs' authority reveals that the facts at issue in those cases are completely inapposite to the facts at issue here, where Plaintiffs seek to recover based on

minute levels of a substance that are undetectable to the human senses. For example, in *Fairlawn Cemetery Association v. First Presbyterian Church*, the defendants "piled huge amounts of dirt" against the plaintiff's wall, which "caused the wall to crack and lean." 496 P.2d at 1186. In *Vertex Holdings, LLC v. Cranke*, 217 P.3d 120 (Okla. Civ. App. 2008), the defendants unlawfully installed sewer lines on plaintiffs' land, which caused "flooding and erosion on their property." *Id*. at 122. In *Williamson v. Fowler Toyota, Inc.,* 956 P.2d 858 (Okla. 1998), the defendant's independent contractor "cut a chain locking the gate to [plaintiff's property] and entered without the permission of the owner" in order to repossess a vehicle. *Id*. at 862. In *Frank v. Mayberry*, 985 P.2d 773 (Okla. 1999), the alleged trespass involved such actions as "cutting a chain on the [plaintiff's] gate…; driving trucks onto the [plaintiff's] property; cutting a tree limb; [and] filling in part of a ditch to allow their truck access." *Id*. at 776. In *Angier v. Mathews Exploration Corp*., 905 P.2d 826 (Okla. Civ. App. 1995), the defendant "locat[ed] the entry way for the access road at the southeast corner of [plaintiff's] lands rather than the northeast corner as provided in the[ir] Agreement" and "destroyed trees" on her property. *Id*. at 828.

Plaintiffs cite only two "pollution" cases in support of their trespass claims, and both of those cases likewise involved tangible trespass claims because the substance at issue was perceptible to the senses. In *Pure Oil Co. v. Quarles*, 82 P.2d 970 (Okla. 1938), the defendant "allowed *salt water* to run into and pollute the only fresh water supply in [plaintiff's] pasture," which prevented the plaintiffs from using the pasture for grazing cattle. *Id*. at 973 (emphasis added). Similarly, in *Cooperative Refinery*

*Association v. Young*, 393 P.2d 537 (Okla. 1964), "Plaintiffs' proof showed spilling or pumping of *salt water* upon the land and in the slush pits," which resulted in "permanent damage to the surface of the land." *Id*. at 539-40 (emphasis added). Clearly, the saltwater at issue in *Pure Oil* and *Cooperative Refinery* was a tangible physical invasion that was both perceptible (and noxious) to the senses and resulted in physical damage to plaintiffs' properties. This is worlds apart from the sub-microscopic levels of perchlorate at issue in this litigation, which are odorless, tasteless, and caused no physical damage.

Accordingly, Moving Plaintiffs have failed to meet their burden of showing either a tangible physical invasion or an intangible invasion that caused substantial physical damage to their property. Not only are they not entitled to summary judgment; their trespass claims fail as a matter of law.

> **B.    Additionally, Plaintiffs with Perchlorate Levels on their Property Below the EPA's Interim Safe Level Have No Legally Cognizable Injury and, at Best, Disputed Issues of Fact Would Remain with Respect to the Remaining Two Properties with Levels Above 15 ppb**

Moreover, Plaintiffs concede that the vast majority of Moving Plaintiffs do not have perchlorate levels in excess of the EPA's interim safe drinking water level of 15 ppb. *See* Pls.' Statement of Undisputed Material Facts, ¶ 17 (noting EPA's interim safe level of 15 ppb); *id*., ¶¶ 18-21 (listing perchlorate concentrations on Moving Plaintiffs' properties); *see also* Knox Rpt., ¶¶ 24-25 (confirming that all but two properties owned by Moving Plaintiffs contain no detectable perchlorate or perchlorate at levels below EPA's interim safe level of 15 ppb). As a matter of law, Moving Plaintiffs with levels of perchlorate on their property below the EPA's interim safe level do not have a cognizable

injury and lack Article III standing. *See* HESI's Motion for Summary Judgment Based on Plaintiffs' Failure to Establish a Legally Cognizable Injury.[5]

Furthermore, with respect to the two properties with perchlorate levels in excess of 15 ppb (the properties owned by the Bickerstaffs and the Joneses), even if Oklahoma law permitted them to recover for an intangible trespass in the absence of substantial physical damage to the land—and it does not—disputed issues of material fact nevertheless prevent the entry of summary judgment. Proving perchlorate levels above regulatory levels is a *necessary* but not *sufficient* condition for a demonstration of cognizable injury. *See N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 294-95 (Okla. Civ. App. 1996) (evidence that contamination in groundwater exceeded safe drinking water standards merely "***raise[d] a fact issue as to whether a nuisance exists***" (emphasis added)); *Trail v. Civil Eng'r Corps*, 849 F. Supp. 766, 768 (W.D. Wash. 1994) (granting summary judgment to defendants on nuisance and negligence claims, even though one of sixteen chemicals present was above the presumptive safe level, because defendants presented unrebutted testimony that the levels above the regulatory limit found for that one chemical posed no health risk).

Significantly, nowhere in their Motion do Plaintiffs contend that it is undisputed that any particular level of perchlorate on any Moving Plaintiff's property poses a health

---

[5]     *See*, in the *Bickerstaff* case, No. CIV-11-1305-M [Doc. #125]; in the *Eldridge* case, No. CIV-11-1306-M [Doc. #115]; in the *Booth* case, No. CIV-11-1308-M [Doc. #115]; in the *May* case, No. CIV-11-1309-M [Doc. #115]; in the *Campbell* case, No. CIV-11-1311-M [Doc. #115]; in the *Southerland* case, No. CIV-11-1312-M [Doc. #115]; in the *Jones* case, No. CIV-11-1322-M [Doc. #121]; in the *Cheek* case, No. CIV-13-116-M [Doc. #99].

risk.  *See* Pls.' Statement of Undisputed Material Facts, ¶¶ 1-23.  Indeed, the health risks of perchlorate above 15 ppb are clearly disputed in this litigation.  *See* HESI's Motion for Summary Judgment Based on Plaintiffs' Failure to Establish a Legally Cognizable Injury at 35 n.11 ("It must be emphasized that the presence of a substance ***above*** regulatory levels does not mean that a potential health threat exists or that a tort claim lies."); *see also* ODEQ, "Perchlorates in Duncan Ground Water," *LAND* (Aug. 2011) (citing Agency for Toxic Substances and Disease Registry ("ATSDR") study finding that healthy volunteers who were exposed to levels of perchlorate far in excess of EPA's interim safe level "showed no signs of abnormal functioning of their thyroid gland or any other health problem") (attached as Ex. 5).

## II.  SUMMARY JUDGMENT IS IMPROPER AS TO MOVING PLAINTIFFS' PUBLIC NUISANCE CLAIMS

Moving Plaintiffs also seek summary judgment declaring that HESI "is liable to *all of the Plaintiffs* under the legal theory of public nuisance."  Pls.' Mot. at 1 (emphasis added).  This request is fatally flawed for two primary reasons.  First, pursuant to the public nuisance statute under which they seek to recover, Moving Plaintiffs have the burden of proving that perchlorate is present "in quantities which are or will likely create a nuisance or which will render the environment harmful or detrimental or injurious to public health, safety or welfare," 27A O.S. § 2-1-102(12)—issues that, at best, involve disputed questions of fact.  Second, in order to maintain a private right of action for public nuisance, Moving Plaintiffs must show that the alleged public nuisance is "specially injurious" to them.  50 O.S. § 10.  That requirement, by definition, necessitates

a property-specific, individualized showing of harm. *See McCormick*, No. CIV-1101272-M [Doc. #215] at 6 (holding that "no [Plaintiff] can recover under a public nuisance theory without introducing individualized evidence of special harm different from other members of the public"). However, Moving Plaintiffs have offered no Plaintiff-specific evidence purporting to establish such special injuries. Accordingly, summary judgment in their favor is clearly inappropriate.

### A. Moving Plaintiffs' Reliance on Section 2-6-105 of the Oklahoma Environmental Quality Code Undercuts Their Own Arguments

In support of their public nuisance claims, Moving Plaintiffs rely on Section 2-6-105(A) of the Oklahoma Environmental Quality Code, which provides:

> It shall be unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any air, land or waters of the state. Any such action is hereby declared to be a public nuisance.

27A O.S. § 2-6-105(A). As used in the Oklahoma Environmental Quality Code, the term "pollution" is defined as follows:

> [T]he presence in the environment of any substance, contaminant or pollutant, or any other alteration of the physical, chemical or biological properties of the environment or the release of any liquid, gaseous or solid substance into the environment *in quantities which are or will likely create a nuisance* or *which render or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare*, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, or to property[.]

27A O.S. § 2-1-102(12) (emphasis added). This statutory language clearly establishes that the mere release of a contaminant into the environment is not sufficient to constitute "pollution"; rather, the substance must be present "in quantities which are or will likely

13

create a nuisance or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare….” *Id*. Thus, the mere presence of a substance is insufficient to constitute a public nuisance, especially when that substance— like the minute levels of perchlorate at issue here—cannot be perceived by the senses.

Indeed, if a defendant could be found liable for nuisance based solely on its release of a substance into the environment, irrespective of the level or amount of that substance, the statutory phrase “in quantities which are or will likely create a nuisance…” would be read out of the statute entirely. Treating that phrase as mere surplusage would flout the Oklahoma Supreme Court’s rules on statutory interpretation, which hold that courts should not construe the text in a manner that would render a portion of the statute inoperable. *See Robison v. Ray*, 637 P.2d 108, 110 (Okla. 1981) (“Statutes must be interpreted to render every word and sentence operative, rather than in a manner which would render a specific statutory provision nugatory.”); *Hamrick v. George*, 378 P.2d 324, 327 (Okla. 1962) (“A statute should be construed…so as to give effect to it as an entirety, and to render every word, phrase and clause operative.”). Under Plaintiffs’ interpretation, any time an actor starts any internal combustion engine in this state, such “action” would be “unlawful” and “declared to be a public nuisance” by the legislature.

Moreover, Moving Plaintiffs have offered *no evidence*—much less undisputed evidence—that any Plaintiff has perchlorate on his or her property at levels that “render or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare.” 27A O.S. § 2-1-102(12). Instead, their Motion simply states that “[t]here is can [sic] no dispute that the pollution was harmful and unlawful.” Pls.’ Mot.

at 9. In support of that bald assertion, Plaintiffs cite only two authorities: Section 2-6-105(A) of the Oklahoma Environmental Quality Code (the same provision quoted above) and the EPA's interim safe level of 15 ppb. These cites establish nothing, other than that virtually all the properties do not have perchlorate at legally actionable levels.

In fact, their evidence establishes the opposite of what it purports to prove: six of the eight "currently impacted" properties identified by Moving Plaintiffs' hydrology expert, Robert Knox, have perchlorate concentrations *below* the EPA's interim safe level of 15 ppb. *See* Knox Rpt., ¶ 24 (the Lindahl, Handke, Thomas, Wilkerson, Campbell, and Lentz properties). Moreover, Dr. Knox also concedes that an additional fifteen properties are not currently impacted by perchlorate from the Site at all. *See id.*, ¶ 25 (the Booth, Cheek, Eldridge, Gammill, Hurley, Korsgard, May, Monroe, Riley, Shelton, Shutts, Smith, Southerland, and Wade properties).[6] Thus, only two properties owned by Moving Plaintiffs have had perchlorate levels measured above 15 ppb at any point in time. *Id.*, ¶ 24 (the Bickerstaff and Jones properties). Even as to those properties, however, Moving Plaintiffs have offered no evidence that perchlorate levels in excess of 15 ppb are "injurious to public health, safety or welfare." 27A O.S. § 2-1-102(12). As discussed in Section I.B above, the health risks of perchlorate above 15 ppb are clearly disputed in this litigation, which means that the Bickerstaffs and Joneses are not entitled to summary judgment either.

---

[6] Ann and Ronald Spencer are not addressed by Dr. Knox in his report or in Moving Plaintiffs' Motion. Therefore, they have no expert evidence to support their allegation that their property has been impacted or could become impacted in the future. Their claims fail for this additional reason.

At best, then, the Bickerstaffs and Joneses are the only Moving Plaintiffs whose tort claims do not *fail as a matter of law*. *See* HESI's Motion for Summary Judgment Based on Plaintiffs' Failure to Establish a Legally Cognizable Injury. Even as to these properties, however, Oklahoma law makes clear that the question of whether HESI is liable to those Plaintiffs presents a triable issue of fact that cannot be resolved on summary judgment.

For example, in *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 929 P.2d 288 (Okla. Civ. App. 1996), the plaintiffs sued an oil and gas lessee for alleged groundwater contamination and sought recovery under claims sounding in public nuisance, private nuisance, and trespass. The court noted that "Plaintiffs presented evidence to the trial court showing that chloride levels in the groundwater *exceeded safe drinking water standards*, and that the appraisal value of the property had decreased by more than $2 million." *Id*. at 294 (emphasis added). Even though the plaintiffs presented evidence that the chloride levels in their groundwater exceeded safe drinking water standards, the court merely held that "the evidence introduced by Plaintiffs as to the type of inconvenience and injury that the property has suffered so far is legally sufficient *to raise a fact issue as to whether a nuisance exists*." *Id*. at 294-95 (emphasis added). That ruling fully comports with the position that HESI has taken all along: that Plaintiffs whose properties contain perchlorate *below* the EPA's interim safe level of 15 ppb do not have cognizable injuries, while Plaintiffs who own properties containing perchlorate *above* 15 ppb have raised triable issues that must be resolved by the factfinder.

Because Moving Plaintiffs and their expert have shown that 21 out of the 23

16

properties at issue in this Motion contain no detectable perchlorate, or perchlorate at levels below the EPA's interim safe level of 15 ppb, summary judgment not only fails for such Plaintiffs; the evidence shows that summary judgment must be entered *against* them.  *See* HESI's Motion for Summary Judgment Based on Plaintiffs' Failure to Establish a Legally Cognizable Injury.  Furthermore, as to the two properties where perchlorate levels have been measured above 15 ppb, Plaintiffs' Motion fails because disputed issues of fact remain as to whether perchlorate is present "in quantities which are or will likely create a nuisance or which render or will likely render the environment harmful or detrimental or injurious to public health, safety or welfare."  27A O.S. § 2-1-102(12).  As *N.C. Corff* confirms, summary judgment in favor of a toxic tort plaintiff cannot be entered based on proof of contamination *above* a regulatory safe level, because there will still be triable issues of material fact as to whether the contamination poses a health risk or has unreasonably interfered with the plaintiff's use and enjoyment of property.  The only evidence Moving Plaintiffs have established about the Bickerstaff and Jones properties is that perchlorate levels exceed the EPA's interim safe level of 15 ppb, which is no more than the evidence established by the plaintiffs in *N.C. Corff*.  Accordingly, if summary judgment was inappropriate in *N.C. Corff*, it is clearly inappropriate here as well.

**B.    Additionally, Moving Plaintiffs Have Not Shown the "Special Injury" Necessary to Recover for Public Nuisance**

Oklahoma law provides that "[a] private person may maintain an action for a public nuisance if it is ***specially injurious*** to himself but not otherwise."  50 O.S. § 10

(emphasis added). Although Plaintiffs rely on 27A O.S. § 2-6-105 in support of their public nuisance claims, Oklahoma courts have made clear that this statutory provision "does not alter the additional requirement…that a party must prove special injury in order to bring an action for abatement of a public nuisance, or for damages." *N.C. Corff*, 929 P.2d at 291 (citing 50 O.S. § 10). Oklahoma law defines the "special injury" required for a private citizen to recover damages for public nuisance to be an injury different in both kind and degree from that suffered by the public at large. *See McKay v. City of Enid*, 109 P. 520, 522 (Okla. 1910) ("As to what are special damages flowing from a public nuisance, for which a private individual may recover, the rule is that the injury from which they result must be ***different in kind, not merely degree,*** from that suffered by the general public from the act complained of." (emphasis added)).

Moreover, this Court has already ruled, in the context of its denial of class certification, that no Plaintiff "can recover under a public nuisance theory without introducing ***individualized evidence*** of special harm ***different from other members of the public***, which would necessarily include other members of the class." *McCormick*, No. CIV-11-1272-M [Doc. #215] at 6 (emphasis added).

Moving Plaintiffs have ignored this holding of the Court in requesting a generic declaration of nuisance liability as to all Plaintiffs. *See* Pls.' Mot. at 1 (stating that HESI "is liable to all of the Plaintiffs under the legal theory of public nuisance"); *see also id.* at 16 ("...to the extent Plaintiffs are able to prove at trial that they have suffered such injuries as a result of pollution of the groundwater, then they are entitled to recover damages under a public nuisance theory.") They ignore the fact that, *in order to obtain a*

*judgment in the first instance*, they have the burden of proving such injuries, as those injuries are a required *element* of a nuisance claim—indeed they are the very heart of any nuisance claim, public or private. The following passage from Plaintiffs' Motion underscores the extent to which Plaintiffs have strayed from this basic premise of Oklahoma law and the Court's prior rulings:

> Plaintiffs **allege** they have suffered specific, direct and tangible injury as a result of the pollution of ***the Property***, including diminution in value of the land and personal annoyance and inconvenience. Each of these harms are different in both degree and kind than the generalized type of harm to the environment that the Legislature sought to prevent by enacting the Oklahoma Environmental Quality Code, and have consistently been recognized as meeting the "special injury" requirement for public nuisance. *See, e.g.*, *Davis v. Shell Oil. Co.*, 795 F.Supp. at 384.

*Id*. at 15-16 (emphasis added). First, Plaintiffs' argument rests on mere allegations, not evidence. Second, they refer to an undefined and undifferentiated collection of parcels ("the Property") rather than specific properties. Third, they cite no facts or expert testimony concerning any specific property or any individual Plaintiff, nor do they explain how any property owner has suffered harm "different in both degree and kind" from any harm suffered by the public at large. Fourth, in the case Plaintiffs cite in support of their supposed entitlement to summary judgment—*Davis v. Shell Oil Co.*—the Court held that "there [was] clearly an ***issue of fact*** as to whether plaintiffs have suffered specific injuries" and thus "summary judgment [was] not appropriate on the public nuisance claims." 795 F. Supp. 381, 384 (W.D. Okla. 1992) (emphasis added).

Plaintiffs' request for a collective public nuisance determination as to all Moving Plaintiffs flies in the face of this Court's repeated admonitions that public nuisance

claims require property-specific, individualized proof of special harm. Compounding matters, the vast majority of Plaintiffs at issue in this Motion cannot even show that their respective properties are presently contaminated. *See* Knox Rpt., ¶ 25. The Motion does not even mention these Plaintiffs by name, and it is clear that none of these allegedly "threatened" Plaintiffs have proven any injury, much less a special injury different in kind from other members of the public. *See Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.11 (Mich. 1992) ("[P]laintiffs concede that no contamination reached the groundwater underlying their properties. Thus, there exists no evidence of harm of a different kind than that suffered by members of the general public.").

Courts uniformly have reached similar holdings even with respect to plaintiffs who own properties that have been contaminated, unless those plaintiffs have demonstrated that they have suffered "special harms" separate in kind, and not merely degree, from those suffered by other owners of contaminated property. *See, e.g., Rhodes v. E.I. Du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 769 (S.D. W. Va. 2009) (even though plaintiffs alleged present contamination of their water supply, these were "not special injuries with which the plaintiffs have standing to bring a public nuisance claim" because "contamination alone, without any evidence of physical harm, is not an injury at all and certainly not one upon which the plaintiffs could base their public nuisance claim"); *Arriaga v. New England Gas Co.*, 483 F. Supp. 2d 177, 187 (D.R.I. 2007) (in mercury contamination case, plaintiffs could not assert viable public nuisance claims because "the possibility that the *degree* of harm suffered by the plaintiffs might be greater than the degree of harm suffered by other members of the public would not establish that

the plaintiffs' harm is separate and distinct" (emphasis in original)).

For all these reasons, Moving Plaintiffs have failed to establish the "special injury" required by their public nuisance claims, and this Court should therefore deny their motion for partial summary judgment.

## III. SUMMARY JUDGMENT IS IMPROPER ON HESI'S AFFIRMATIVE DEFENSES

Moving Plaintiffs request summary judgment in their favor as to HESI's pled affirmative defenses. *See* Pls.' Mot., Section IV. Moving Plaintiffs' contentions regarding affirmative defenses are now moot. With the consent of Moving Plaintiffs' counsel Mr. Johnston, secured *before* the Motion was filed, HESI has filed an Amended Answer in each of the above-referenced cases.[7]

Although the filing of new pleadings moots Moving Plaintiffs' contentions regarding the superseded Answers, making further discussion unnecessary,[8] HESI would observe as follows:

The Amended Answers assert the defense of "ripeness" in response to the Complaints of all Plaintiffs where such Plaintiff has no evidence, or only disputed evidence, of perchlorate concentrations in excess of regulatory limits. The ripeness

---

[7]    In the *Bickerstaff* case, No. CIV-11-1305-M, *see* [Doc. #140]; in the *Eldridge* case, No. CIV-11-1306-M, *see* [Doc. #126]; in the *Booth* case, No. CIV-11-1308-M, *see* [Doc. #126]; in the *May* case, No. CIV-11-1309-M, *see* [Doc. #126]; in the *Campbell* case, No. CIV-11-1311-M, *see* [Doc. #126]; in the *Southerland* case, No. CIV-11-1312-M, *see* [Doc. #126]; in the *Jones* case, No. CIV-11-1322-M, *see* [Doc. #132]; in the *Cheek* case, No. CIV-13-116-M, *see* [Doc. #113].

[8]    For instance, HESI no longer asserts that any of Plaintiffs' claims are "moot," making particular discussion of mootness itself moot.

doctrine aims "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1249 (10th Cir. 2011), *aff'd*, 133 S. Ct. 2120 (2013) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The legal and factual basis for this defense is set forth in HESI's Motion for Summary Judgment Based on Plaintiffs' Failure to Establish a Legally Cognizable Injury. As outlined therein, HESI would aver that the proper legal designation of the failure of those Plaintiffs' claims is, consistent with the case law, the lack of a legally cognizable injury. However, based on the exact same undisputed facts and analysis, the Court could conclude that those Plaintiffs who cannot establish perchlorate concentrations in excess of regulatory limits have simply brought their dispute prematurely. HESI has hence properly preserved its ripeness defense.

The Amended Answers further preserve, in connection with the claims of Ann Thomas, the defense of failure to mitigate damages, and, for Plaintiffs Stephen G. Jones and Cynthia L. Jones, the defenses of comparative/third-party negligence, supervening/intervening cause, and failure to mitigate damages.

Ann Thomas testified that she refused an offer to have her property connected to public water after the perchlorate issue became public. *See* 3/10/15 Thomas Dep. at 40:4-41:8 (attached as Ex. 6). Should Mrs. Thomas's claims ever go before a jury, this would be a material issue for the finder of fact to consider. "The failure to mitigate damages is an 'incomplete' affirmative defense, that is, one which will not entirely defeat recovery but which goes only to the amount of damages the injured party may recover." *Sabine Corp. v. ONG W., Inc.*, 725 F. Supp. 1157, 1186 (W.D. Okla. 1989). It would be up to

the jury to decide whether and/or to what extent Mrs. Thomas's refusal to connect to public water constitutes a failure to mitigate. HESI has clearly "submitted evidence creating factual issues relating to this defense," *id.* at 1187, and the defense has been properly pled.

Fact discovery has also produced evidence creating a triable material fact in connection with the pleading of the defenses of comparative/third-party negligence, supervening/intervening cause, and failure to mitigate damages in connection with the claims of the Joneses. For example, Plaintiff Stephen Jones testified that he has two wells on his property, one for drinking and one for filling his pond. *See* 2/25/15 Jones Dep. at 68:25-69:11 (attached as Ex. 7). To fill the pond, he pumps his well "continuously" at a rate of over twenty gallons per minute. *Id.* at 70:11-15. HESI's hydrologist Steven Larson testified that, when HESI first tested the wells on Mr. Jones's property in 2011, the highest recorded concentration of perchlorate was 3 ppb. *See* 1/15/15 Larson Dep. at 315:3-12. Perchlorate levels have since been tested above 15 ppb, which Mr. Larson attributes to Mr. Jones's sustained pumping activities that diverted groundwater flow from its natural course and drew perchlorate onto the property. *See id.* at 316:4-317:19. Thus, a reasonable juror could conclude—assuming they first reached the conclusion that the Joneses have a harmful level of perchlorate on their property at all—that one of the reasons for that perchlorate concentration was Mr. Jones's actions resulting in the drawing of perchlorate onto the property. Therefore, the defenses of comparative/third-party negligence, supervening/intervening cause, and failure to mitigate damages have material factual support in connection with the Joneses'

claims and have been properly pled.

## CONCLUSION

WHEREFORE, for the reasons set forth above, all of Moving Plaintiffs' various requests for partial summary judgment lack merit, and Defendant respectfully requests that the Motion be denied in all respects.

Respectfully submitted,

/s/ *J Kevin Buster*

Gerald P. Green, OBA No. 3563
Peter L. Wheeler, OBA No. 12929
Robert L. Betts, OBA No. 21601
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
Post Office Box 26350
Oklahoma City, Oklahoma  73126
Telephone     (405) 235-1611
Facsimile      (405) 235-2904
jgreen@piercecouch.com
pwheeler@piercecouch.com
rbetts@piercecouch.com

- and -

J Kevin Buster (*pro hac vice*)
Carmen R. Toledo (*pro hac vice*)
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
kbuster@kslaw.com
ctoledo@kslaw.com

- and -

R. Bruce Hurley, (*pro hac vice*)
KING & SPALDING, L.L.P.
1100 Louisiana Suite 4000
Houston, Texas 77002
Telephone     (713) 751 3200
Facsimile     (713) 751 3290
bhurley@kslaw.com

*Attorneys for Defendant Halliburton*
*Energy Services, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on May 29, 2015, a true and correct copy of the above and foregoing was served electronically via the ECF system for the USDC for the Western District of Oklahoma, to all counsel of record.


/s/  *J Kevin Buster*