IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

---

| | |
|---|---|
| (1) KRAIG BICKERSTAFF and )<br>(2) ANITA BICKERSTAFF, )<br> )<br>            Plaintiffs, )<br> )<br>v. )<br> )<br>(1) HALLIBURTON ENERGY SERVICES, )<br>INC., a Delaware corporation, )<br> )<br>            Defendant. ) | Case No. CIV-11-1305-M |

---

| | |
|---|---|
| (1) FRANK D. ELDRIDGE and )<br>(2) SHELLY L. ELDRIDGE, )<br> )<br>            Plaintiffs, )<br> )<br>v. )<br> )<br>(1) HALLIBURTON ENERGY SERVICES, )<br>INC., a Delaware corporation, )<br> )<br>            Defendant. ) | Case No. CIV-11-1306-M |

---

| | |
|---|---|
| (1) ROBIN L. BOOTH and )<br>(2) LARRY A. BOOTH, )<br> )<br>             Plaintiffs, )<br> )<br>v. )<br> )<br>(1) HALLIBURTON ENERGY SERVICES, )<br>INC., a Delaware corporation, )<br> )<br>            Defendant. ) | Case No. CIV-11-1308-M |

---

___

| | |
|---|---|
| (1) HARMEN ARLEN MAY and <br> (2) LINDA L. MAY, <br><br> Plaintiffs, <br><br> v. <br><br> (1) HALLIBURTON ENERGY SERVICES, <br> INC., a Delaware corporation, <br><br> Defendant. | Case No. CIV-11-1309-M |

___

| | |
|---|---|
| (1) LESLIE T. CAMPBELL and <br> (2) BEVERLY S. CAMPBELL, <br><br> Plaintiffs, <br><br> v. <br><br> (1) HALLIBURTON ENERGY SERVICES, <br> INC., a Delaware corporation, <br><br> Defendant. | Case No. CIV-11-1311-M |

___

| | |
|---|---|
| (1) EVELYN BERNICE SOUTHERLAND, <br><br> Plaintiff, <br><br> v. <br><br> (1) HALLIBURTON ENERGY SERVICES, <br> INC., a Delaware corporation, <br><br> Defendant. | Case No. CIV-11-1312-M |

___

| | |
|---|---|
| (1) STEPHEN G. JONES and <br> (2) CYNTHIA L. JONES, <br><br> Plaintiffs, <br><br> v. <br><br> (1) HALLIBURTON ENERGY SERVICES, INC., a Delaware corporation, <br><br> Defendant. | Case No. CIV-11-1322-M |
| (1) TERRY CHEEK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> (1) HALLIBURTON ENERGY SERVICES, INC., a Delaware corporation, <br><br> Defendant. | Case No. CIV-13-0116-M |

**PLAINTIFFS' REPLY TO DEFENDANT'S
RESPONSE TO MOTION FOR PARTIAL
SUMMARY JUDGMENT, AND SUPPORTING BRIEF**

Plaintiffs in the above-captioned cases moved for partial summary judgment on the issue of liability against the Defendant, Halliburton Energy Services, Inc. ("Halliburton"), arguing that the undisputed facts show that Halliburton is liable in trespass for the pollution of some of the Plaintiffs' lands and that it is liable to all of the Plaintiffs under the legal theory of public nuisance. In addition, the Plaintiffs sought partial summary judgment on certain affirmative defenses. Plaintiffs now submit the following reply.

## RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL FACTS

In its response, Halliburton sets forth a number of "facts" which it contends precludes summary judgment in this case. The Plaintiffs take issue with a number of these statements. For instance, the allegations in paragraphs 1 and 3 of the Halliburton response are not facts and are not supported by citation to any evidence at all.

The suggestion that the levels of perchlorate at issue here are only "minute" or "trace" is demonstrably wrong. In fact, Halliburton admits that "the concentrations of perchlorate in the groundwater at the Halliburton site range up into the hundreds of thousands of parts per billion" and that "the concentrations of perchlorate in the groundwater at some offsite residential water wells range up into the tens of thousands of parts per billion." *See*, Plf's Motion, Statement of Facts, ¶¶ 15-16. It further admits that the concentration of perchlorate in the groundwater at one of the Plaintiffs' properties "has been measured at up to 2,000 ppb." *See*, Plf's Motion, Statement of Facts, ¶ 18. It is hard to understand how Halliburton can claim that perchlorate levels that are hundreds or even thousands of times greater than EPA's interim advisory level are "minute," or that pollution that constitutes a hazard to human health and renders well water undrinkable does not constitute "physical damage." Regardless, the mere fact that Halliburton says so does not make any such allegations "facts" so as to preclude summary judgment.

The Plaintiffs also take issue with the statement in paragraph 4 of the Halliburton motion which suggests that the DEQ has determined that groundwater with less than 15 ppb of perchlorate is "considered clean to use." This reference is to use in one of

Halliburton's proposed interim remedial "pilot projects." The DEQ letter says nothing about "clean to use" for drinking or other domestic uses. To the contrary, in the view of DEQ personnel it would be best for groundwater to be non-detect for perchlorate. Plf's Resp. to Def's Motion for Summary Judgment re Cognizable Injury, p. 3.

## ARGUMENT AND AUTHORITIES.

**I.     The Defendant Is Liable in Trespass.**

In opposing Plaintiffs' motion for summary judgment for trespass, Halliburton argues that the perchlorate pollution from its facility is "intangible" since it has no taste or odor. Yet none of the Oklahoma cases cited by Halliburton address the actual physical invasion of pollutants onto a plaintiffs' property. The case of *Beal v. Western Farmers Electric Coop.*, 2009 OK CIV APP 6, 228 P.3d 538, concerns electromagnetic fields from power lines, while the case of *Walker v. Apex Wind Constr., LLC*, No. CIV-14-914-D, deals with an anticipatory trespass claim from windmills to be constructed on a neighboring property. Halliburton tries to distinguish the cases cited by the Plaintiffs which actually do address trespass by polluting substances, *Pure Oil v. Quarles,* 1938 OK 422, 82 P.2d 970, and *Cooperative Refinery Assoc. v. Young*, 1964 OK 135, 393 P.2d 537, on the grounds that they involved saltwater which has a perceptible taste. But it is clear that in neither of these cases did the decision turn on whether the landowner had the ability to taste the saltwater – indeed, in the *Quarles* case, the claim related to creek used to water cattle. Rather, in each case the court was concerned with the entry of a harmful substance onto the plaintiffs' property. This is exactly the case here. Simply put, Halliburton has presented

<u>no</u> Oklahoma authority to counter the theory of liability set forth in the Plaintiffs' motion.

As is succinctly stated in the uniform jury instruction that is applicable to this case:

> A trespass is an entry [upon/under the surface of] the real estate of another without the permission of the person lawfully entitled to possession. Permission may be either express or implied.

OUJI, Instruction No. 17.1.

Halliburton also cites *Cook v. Rockwell*, 618 F.3rd 1127 (10th Cir. 2010), in support of its argument. But this was a case arising under the Price-Anderson Act which governs claims for injuries from nuclear incidents. *See, Cook v. Rockwell Int'l Corp.*, 13 F. Supp. 3d 1153, 1159 (D. Colo. 2014)(as modified Feb. 27, 2014)("Congress struck a balance between compensating the victims of nuclear incidents and fostering the development of nuclear energy and technology."). In *Cook*, the appellate court remanded the case for a determination of whether state law claims were preempted by the Act, but went on to address certain claims under Colorado law. The Court reversed an underlying judgment where the "[p]laintiffs did present evidence relevant to a loss of use. Specifically, they tried their nuisance claims under the theory that the presence of plutonium particles on their properties places them at an increased risk of health problems." 618 F.3rd at 1141. As to trespass, the Court found that under Colorado law a plaintiffs must prove physical damage to the property. *Id.* at 1149. But there is some question as to whether the Court in *Cook* properly applied Colorado law. For instance, in *Hoery v. U.S.*, 64 P.3d 214 (Colo. 2003), the Colorado Supreme Court found that the pollution of groundwater by toxic chemicals constituted a trespass without discussion of damage to the property and, further, without

consideration of whether the chemical imparted any taste or odor to the groundwater.[1]

In any event, the uncontroverted evidence here is that injurious and harmful pollution from the Halliburton facility has physically encroached upon and impacted these Plaintiffs' properties. Indeed, at the as to Bickerstaff and Jones properties, the impact of the pollution is so great that the concentrations of perchlorate exceed the levels allowed under the EPA's interim advisory level. Because there is no substantial controversy as to any material fact on the issue of Halliburton's trespass upon the these Plaintiffs' properties, they are entitled to partial summary judgment on this issue.

II. **The Undisputed Facts Establish that the Defendant Has Created a Nuisance and Is Liable Therefor to the Extent the Plaintiffs' Can Prove at Trial that the Nuisance Is Specially Injurious to Them.**

Halliburton opposes Plaintiffs' motion for summary judgment on the issue of whether it has created a nuisance, arguing (1) that Plaintiffs have not proven that perchlorate is present "in quantities which are or will likely create a nuisance or which will render the environment harmful or detrimental or injurious to public health, safety or welfare," and (2) that Plaintiffs have not individually shown that the perchlorate pollution from the Halliburton facility is "specially injurious" to them.

---

[1] Indeed, on remand, the district court remained of the opinion that the plaintiffs had properly pleaded and proved a state law case. *Cook v. Rockwell Int'l Corp.*, 13 F. Supp. 3d 1153, 1154 (D. Colo. 2014)(as modified Feb. 27, 2014)("I remain convinced that the Colorado jurors in this case correctly found Plaintiffs to have suffered a nuisance under Colorado state-law based on the nuclear contamination for which Defendants are responsible, but I have come to terms with the fact that the law, which I am bound to uphold, does not permit independent Colorado state-law claims based on alleged radiation injury.").

### A. Liability for Public Nuisance.

As to the first point, the evidence in this case – which is undisputed by Halliburton – is that "the concentrations of perchlorate in the groundwater at the Halliburton site range up into the hundreds of thousands of parts per billion" and that "the concentrations of perchlorate in the groundwater at some offsite residential water wells range up into the tens of thousands of parts per billion." *See*, Plf's Motion, Statement of Facts, ¶¶ 15-16. Halliburton further admits that the concentration of perchlorate in the groundwater the property of the Bickerstaff Plaintiffs "has been measured at up to 2,000 ppb." *See*, Plf's Motion, Statement of Facts, ¶ 18. These are levels of perchlorate that are hundreds or even thousands of times greater than EPA's interim advisory level of 15 ppb. It is, therefore, absurd for Halliburton claim that the Plaintiffs have not proven that perchlorate is present "in quantities which are or will likely create a nuisance or which will render the environment harmful or detrimental or injurious to public health, safety or welfare[.]"

To the extent Halliburton says that it disputes whether concentrations of perchlorate above 15 ppb are "harmful or detrimental or injurious," the Plaintiffs would point out that Halliburton has not submitted actual evidence to support this contention. And certainly, Halliburton has submitted no evidence to show that are perchlorate levels that are many times greater than EPA's interim advisory level of 15 ppb are not "harmful or detrimental or injurious." To the contrary, the evidence cited by Halliburton itself – the Report of Gary L. Ginsberg (Def's Resp. at p. 4, ¶ 2) – affirmatively demonstrates that such levels of perchlorate are in fact harmful. Accordingly, there is no question that Halliburton caused

"pollution" as it is defined in 27A O.S. § 2-1-102(12).

Halliburton cites *N.C Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, 929 P.2d 288, for the proposition that levels of contaminants that exceed EPA drinking water standards merely gives rise to a fact issue as to whether a nuisance exists. But this citation is misleading here because Halliburton does not give the context for this decision. In *N.C. Corff*, the district court granted summary judgment to the <u>defendant</u> despite the fact that the evidence showed contaminants in the groundwater in excess of EPA standards. On appeal by the <u>plaintiff</u>, the court reversed the summary judgment holding that this evidence presented an issue of fact which prevented summary judgment in favor of the defendant. *Id*. at 294-95. Thus, the decision says absolutely nothing about whether such evidence may support summary judgment for a plaintiff because that issue was not before the court.

In this instance, the Plaintiffs have carried their burden to show that Halliburton has caused pollution and that it has, therefore, created as public nuisance *per se* under 27A O.S. § 2-6-105(A). Plaintiffs are, therefore, entitled to summary judgment.

B. <u>Specially Injurious.</u>

In its response, Halliburton makes the point that the Plaintiffs have not proven that the nuisance created by Halliburton is "specially injurious" to them. There is a reason for this. In their motion, the Plaintiffs recognized and explicitly stated that this issue represents a disputed question of fact to be determined at trial:

> Having maintained a nuisance, Halliburton is liable for any damages resulting from it. So to the extent Plaintiffs are able to prove at trial that they [have] suffered damages as a result of this nuisance, then they are entitled to recover therefor. In

> addition, to the extent that Plaintiffs are able to prove that the pollution of the groundwater is specially injurious to them, they will be entitled to recover any resulting damages under a public nuisance theory.

Plf's Motion, at p. 16. Therefore, the Plaintiffs' motion does not seek summary judgment on this point. This does not, however, prevent the Court from streamlining these proceedings by making the determination that the undisputed evidence establishes that Halliburton created a public nuisance by causing pollution of the groundwater. *Tosco Corp. v. Koch industries, Inc.*, 216 F.3d 886 (10th Cir. 2000).

### III. The Plaintiffs Are Entitled to Summary Judgment on Defendant's Affirmative Defenses.

In their motion, the Plaintiffs sought summary judgment with respect to certain affirmative defenses raised by Halliburton, including claims that (a) plaintiffs failed to mitigate their damages; (b) plaintiffs' claims are unripe; (c) plaintiffs' claims are moot; (d) plaintiffs' nuisance claims are barred by 50 O.S. § 4; (e) plaintiffs' caused or contributed to their injuries by their own acts; (f) third parties caused or contributed to plaintiffs' injuries; and (g) plaintiffs' injuries were caused by an intervening or supervening cause.

Since that time, Halliburton filed amended answers which withdraw many of these affirmative defenses. For example, in *Bickerstaff, et ux., v. Halliburton*, Case No. CIV-11-1305-M, Halliburton filed an amended answer in which it sets up only three affirmative defenses, with the only one subject to the Plaintiffs' motion being the allegation that the "Plaintiff's injuries and damages, if any, were caused or contributed to by the acts or omissions of the Plaintiffs." *See*, Amended Answer, ¶ 55 [Doc. No 140]. In other cases,

Halliburton retains additional affirmative defenses alleging that certain Plaintiffs failed to mitigate their damages and that Plaintiffs' claims are not "ripe." *See, e.g., Cheek, et al., v. Halliburton,* Case No. CIV-13-116-M, Amended Answer, at ¶¶ 71-72 [Doc. No 113].

In its response, Halliburton explains that the "ripeness" defense is the subject of its Motion for Summary Judgment for Failure to Establish a Legally Cognizable Injury. This defense, therefore, will rise or fall based upon the Court's determination of that motion. Halliburton also makes at least an effort to provide some factual support for its claim that Ann Thomas, one of the Plaintiffs in *Cheek, et al., v. Halliburton,* Case No. CIV-13-116-M, failed to mitigate her damages, and that the Plaintiffs in *Jones v. Halliburton*, Case No. 11-1322-M, contributed to their own damages. The Plaintiffs question whether the meager factual support Halliburton cites in its response is sufficient to give rise to a triable issue with respect to these claims. In particular, with respect to the *Jones* Plaintiffs, Halliburton omits to recite the portion of its own expert's testimony where he states he has no criticism of the Joneses and says he knows nothing about their right to pump their own well. Ex. 7, Larson depo., pp. 317:22 to 318:5. But aside from these two specific instances, it is perfectly clear that Halliburton has failed to provide <u>*any*</u> factual support for its affirmative defenses as to any of the other Plaintiffs. Because of Halliburton's failure to meet its burden to "set forth specific facts" that would be admissible at trial to support its claimed affirmative defenses as to each of the individual Plaintiffs in the captioned cases, the Plaintiffs are entitled to summary judgment on these defenses.

## III.  CONCLUSION.

WHEREFORE the Plaintiffs respectfully request that the Court grant summary judgment in favor of the Plaintiffs and against the Defendant as set forth herein, and for such further relief as the Court determines is appropriate.

Respectfully submitted,

s/ Wes Johnston
Wes Johnston, OBA # 13704
Attorney for Plaintiffs
JOHNSTON & ASSOCIATES
118 N. Fourth Street, P.O. Box "F"
Chickasha, Oklahoma 73023
Telephone: (405) 224-4000
Fax: (405) 224-0003
wes@wesjohnston.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. All other counsel of record will be served by mail.

s/ Wes Johnston